## HUKILL v. MAYSVILLE & B. S. R. CO. et al.

### (Circuit Court, D. Kentucky.)

**1. PRACTICE—VOLUNTARY DISMISSAL—NEW ACTION.**
　　The plaintiff's voluntary dismissal of an action for a tort, as against some of the defendants, not on the merits, is not a bar to a subsequent action by such plaintiff against the same defendants.

**2. REMOVAL OF CAUSES — DIVERSE CITIZENSHIP — FRAUDULENT JOINDER OF PARTIES.**
　　In order to justify the removal to a federal court of a suit in which some of the defendants are citizens of the same state as the plaintiff,

on the ground that such defendants have been fraudulently joined to defeat the jurisdiction of the federal court, it must appear, not only that they were joined for that purpose, but that no cause of action is stated against them, or that they are in law improperly joined, or that the averments of fact on which a joint liability is asserted are so palpably untrue or unfounded as to make it improbable that the plaintiff could have inserted them in good faith.

3. RAILROAD COMPANIES—UNAUTHORIZED LEASES—LIABILITY FOR NEGLIGENCE.
Where a railway company leases its line, without authority of law, though the lease is void, a servant of the lessee company, whose rights depend only upon contract, and not upon any public duty, cannot recover against the lessor company for injuries sustained through the negligence of the lessee in the operation of the road.

4. MASTER AND SERVANT—LIABILITY FOR TORTS—JOINT AND SEVERAL LIABILITIES.
When a master becomes liable to his servant for a failure to discharge his implied contractual obligation to furnish a reasonably safe place for such servant to work, caused by the personal and affirmative act of another servant, in which no concert of the master is alleged, the liability of the master and of the delinquent servant to the injured party is not joint, but several. Warax v. Railway Co., 72 Fed. 637, reaffirmed.

This case was heard on a motion to remand to the state court.

On the 12th day of January, 1895, the plaintiff filed his petition in the Kenton circuit court, at Independence, Ky., against the Maysville & Big Sandy Railroad Company, Chesapeake & Ohio Railway Company, C. E. Acra, George Shumate, Henry Thien, John Shappart, and W. E. Gaynor, defendants, in the following words:
"Defendant the Maysville & Big Sandy Railroad Company is, and at the time hereinafter stated was, a corporation owning a railroad extending into the county of Kenton, and railway tracks, workshops, roundhouse, railway yard, and other appurtenances in said county. Defendant the Chesapeake & Ohio Railway Company is, and at the times hereinafter stated was, a foreign corporation, and possessed, used, and operated said railroad, railway tracks, workshops, roundhouse, railway yard, and other appurtenances under a lease from said the Maysville & Big Sandy Railroad Company, which lease was made without legislative or other authority; and said the Chesapeake & Ohio Railway Company now so operates said railway. On the night of April 28, 1894, L. A. Hukill was the servant of said the Chesapeake & Ohio Railway Company, employed by it as one of the crew of a switching locomotive engine in the yard of said railroad in Kenton county; and while said Hukill was then and there, as such servant, at work upon and about a train of freight cars of said the Chesapeake & Ohio Railway Company, in said yard, and on said railway, he was, by reason of gross and wanton negligence of all the defendants, struck by a board projecting from the roof of one of another train of freight cars of said the Chesapeake & Ohio Railway Company, then and there in the possession, custody, and control of said corporation, and on another and adjoining track of said railroad, and thereby said Hukill was violently knocked under the train of cars upon and about which he was at work, and was run upon and over by said train, and thereby, and by being so knocked from said car, he was so injured in his person that he soon thereafter died thereof. Said projecting board was part of the roof of said car, from which the same projected. Said projecting board was, and long before said decedent was injured as aforesaid had been, a defect in said car, from which it projected, that endangered the bodies and lives of said decedent and other servants of said the Chesapeake & Ohio Railway Company. Said car, with said board so projecting therefrom, was, in said defective, unsafe, and dangerous condition, by the defendants, with gross and wanton negligence, placed where the same was when said decedent, Hukill, was struck by said board as aforesaid. With gross and wanton negligence, all the defendants permitted said defective car to remain where the same was, in its said defective, unsafe, and dangerous condition, until said decedent was injured

as aforesaid; and, with gross and wanton negligence, all the defendants failed to remedy said defect in said car before said Hukill was injured thereby. The defendants Acra, Shumate, Thien, and Shappart were, at all times aforesaid, in said railway yard, which was then and there an inspecting station of said railway, servants of said the Chesapeake & Ohio Railway Company, employed by it in said yard, and at said inspecting station, as car inspectors and repairers; and, as such servants, said Acra, Shumate, Thien, and Shappart had inspected said car, from which said board projected as aforesaid, long before said decedent was thereby knocked from his place, and under said train, as aforesaid, and before said decedent was injured as aforesaid, and for a time long enough theretofore to have, by the exercise of ordinary care, repaired said defect, and prevented said injury to said Hukill. Said Acra, Shumate, Thien, Shappart, the Chesapeake & Ohio Railway Company, and also their codefendants, well knew of said defect in said car; and, before said Hukill was injured as aforesaid, the defendants Acra, Shumate, Thien, Shappart, Gaynor, and the Chesapeake & Ohio Railway Company, and each of them, could, by the exercise of ordinary care, have known of said defect in said car, and could, by the exercise of such care, have remedied and repaired said defect, and prevented said injury to said decedent. Defendant W. W. Gaynor was, at the times aforesaid, a brakeman upon the train in which was said defective car, and he was then and there the servant of defendant the Chesapeake & Ohio Railway Company, and was by his said employer then and there charged with the work and duty of ascertaining and knowing the condition of said car and train, and to either repair said defect in said car, if he could do so, or, if he could not do so, then to report the same upon the arrival of said train and car in said railway yard. And all the defendants, by their joint gross and wanton negligence, failed to remedy or repair said defect; and, by their joint gross and wanton negligence, all the defendants caused said injury to and death of said decedent. Said L. A. Hukill did not, before he was injured as aforesaid, know that said board by which he was struck projected from said car, nor did he know that there was any defect in said car; and he could not, before he was injured as aforesaid, by the use of ordinary care have known that said board did project from said car, or that said car was in any wise defective. By the death of said decedent his estate was damaged in the sum of fifty thousand dollars. On the —— day of May, 1894, plaintiff was, in and by the county court of Kenton county, Kentucky, duly appointed administrator of the estate of said decedent, and on the same day he duly qualified as such in said court, and he still is such administrator. Plaintiff prays judgment for fifty thousand dollars and costs."

In its petition for removal the Chesapeake & Ohio Railway Company made the necessary averments as to the amount in controversy and the diverse citizenship of itself and the plaintiff, averring that there was, in said suit, a controversy which could be fully determined as between the plaintiff and the petitioner. "Your petitioner further says that suit upon the same cause of action hereinbefore stated was instituted in the Kenton circuit court at Independence, Kentucky, on May 16, 1894, and that, in said suit, the Maysville & Big Sandy Railroad Company, the Chesapeake & Ohio Railway Company, C. E. Acra, George W. Shumate, Henry Thien, and John Shappart were made joint defendants. Thereafter on the 16th day of October, 1894, at a term of Kenton circuit court, at Independence, the plaintiff discontinued said action as to George W. Shumate, C. E. Acra, Henry Thien, John Shappart, and the Maysville & Big Sandy Railroad Company. Petitioner says that the discontinuance as to the said Maysville & Big Sandy Railroad Company, C. E. Acra, George W. Shumate, Henry Thien, and John Shappart was absolute and final, and without the reservation of any right on part of said plaintiff to again institute a suit upon the same cause of action against the said Maysville & Big Sandy Railroad Company, C. E. Acra, George W. Shumate, Henry Thien, and John Shappart, or either or any of them. And petitioner says that, by reason of the absolute discontinuance of said cause as to the said Maysville & Big Sandy Railroad Company, C. E. Acra, George W. Shumate, Henry Thien, and John Shappart, the plaintiff is barred from any further proceedings against them, or either of them, upon said cause of action; and that said plaintiff

has no right or authority in law to now prosecute its cause of action against the said Maysville & Big Sandy Railroad Company, C. E. Acra, George W. Shumate, Henry Thien, and John Shappart, or either of them. Your petitioner says that, upon the discontinuance of said suit, on the 16th day of October, 1894, as to the said Maysville & Big Sandy Railroad Company, and the said Acra, Shumate, Thien, and Shappart, it filed in the Kenton circuit court, at Independence, a petition and bond for removal of said case to the United States circuit court for the district of Kentucky, which said petition for removal alleged that the said Maysville & Big Sandy Railroad Company, and said Acra, Shumate, Thien, and Shappart were fraudulently and improperly joined as parties defendant for the sole purpose of defeating the right of petitioner to remove said case to the United States circuit court; that said case was transferred to the United States circuit court for the district of Kentucky; and that the said plaintiff appeared in said United States circuit court, and moved the court to remand said case; and that the said United States circuit court overruled said motion to remand, and found, as a fact, that said Maysville & Big Sandy Railroad Company, C. E. Acra, George W. Shumate, Henry Thien, and John Shappart were fraudulently and improperly joined for the purpose of evading the jurisdiction of the United States court. And thereafter the plaintiff discontinued said case in said United States circuit court, and thereafter, on January 12, 1895, filed the present suit in this court. Your petitioner says that the said Maysville & Big Sandy Railroad Company was, at the time of the institution of said suit, on May 16, 1894, and still is, a corporation organized under the laws of the state of Kentucky, and of no other state; and that the defendants C. E. Acra, G. W. Shumate, Henry Thien, and John Shappart were, at the time of the institution of this suit, and still are, residents and citizens of the state of Kentucky; and that the said Maysville & Big Sandy Railroad Company, and the said Acra, Shumate, Thien, and Shappart were fraudulently and improperly joined as parties defendant, because of the fact that they were residents and citizens of the state of Kentucky, for the sole purpose of defeating the jurisdiction of the United States circuit court. And your petitioner further says that the said W. E. Gaynor is a sham party defendant, and that he was fraudulently and improperly joined as a party defendant for the sole purpose of defeating the jurisdiction of the United States court; that said W. E. Gaynor was joined as a party defendant because of his residence and citizenship in Kentucky; and that the joining of said W. E. Gaynor as a party defendant is merely a device to defeat the jurisdiction of the United States court. And your petitioner offers herewith a bond, with good and sufficient surety, conditioned according to law, for its entering in the circuit court of the United States for the district of Kentucky, being the proper district, on the first day of its next session, a copy of the record of this suit, and for paying all costs that may be awarded by said court, if said court shall hold that this suit was wrongfully or improperly removed thereto. And your petitioner prays this honorable court to proceed no further herein, except to make the order of removal required by law, and to accept said surety and bond, and to cause the record herein to be removed into said circuit court of the United States for the district of Kentucky. And your petitioner will ever pray."

The plaintiff filed an answer to the petition for removal, in which he did not deny the averments of the petition for removal with reference to the previous suit which had been removed and then dismissed. He denied, however, that any of the defendants was joined in this action fraudulently and improperly for the sole purpose of defeating the jurisdiction of the United States. Upon a hearing of the motion to remand, and on the issue raised between the petition for removal and the answer of the plaintiff, there were introduced the special acts of Kentucky showing the corporation of the Maysville & Big Sandy Railroad Company; and reference was made, under the laws of Kentucky, also, to the charters of the Chesapeake & Ohio Railway Company in West Virginia and Virginia; and reference was made to the General Statutes of Kentucky, showing, as was claimed, authority vested in the Maysville & Big Sandy Railroad to lease its road to the Chesapeake & Ohio Railway Company. There was introduced in evidence, also, the record of the proceedings in the previous suit of Hukill against the same defendants,

referred to in the petition for removal, and set forth in the opinion of this court in the case of Hukill v. Chesapeake & O. Ry. Co., 65 Fed. 138.

Wm. Goebel, for plaintiff.

C. B. Simrall, for defendants.

Before TAFT and LURTON, Circuit Judges.

TAFT, Circuit Judge (after stating the facts as above). This motion came regularly before me in this court, but it involved such important questions in regard to the removal of cases from the state courts to the federal courts that I deemed it my duty to invite Judge LURTON to sit with me in the hearing of the case. This he kindly consented to do, and we have given to the consideration of the issues presented, and those which we find it necessary to decide, the care their importance demanded. We have been assisted by a very full argument by counsel, and by elaborate briefs. If any one of the Chesapeake & Ohio Railway Company's codefendants is properly joined with it, there is no jurisdiction in this court, and the motion to remand is granted. The counsel contend that there is no proper joinder of the railway company, and urge this on a number of grounds: First. It is contended that the proceedings in the previous suit, by which four of the codefendants of the Chesapeake & Ohio Railway Company were dismissed from the action, prevent their joinder here, and estop plaintiff from claiming any liability against them. Second. The second ground is that the proof conclusively shows the joinder of the Chesapeake & Ohio Railway with its codefendants for the sole and fraudulent purpose of depriving it of its constitutional and statutory right of removal to this court. Third. It is insisted that no cause of action, in the petition, is stated either against the Maysville & Big Sandy Railroad Company or against the natural persons codefendants with the removing defendant. Fourth. It is further contended that, under the allegations of the petition, the cause of action against the defendants is not a joint tort, upon which the Chesapeake & Ohio Railway Company and the Maysville & Big Sandy Railroad Company can be joined as defendants with the employés of the Chesapeake & Ohio Railway Company.

1. The contention of the defendants, that the proceedings in the state court in the first suit, by which plaintiff dismissed from the suit four of the codefendants of the Chesapeake & Ohio Railway Company, prevent their joinder in this suit, cannot be sustained. Their dismissal was voluntary on the part of the plaintiff, and was not upon the merits of the cause. The plaintiff had the right, assuming that a joint tort had been committed, to unite all the defendants, or to sue one or more of them. He had the right, therefore, to dismiss against some without prejudice, and to continue his suit against others. No estoppel grew out, therefore, of the dismissal. Moreover, such a plea is matter of defense, and could have no bearing on the question of removal, for that depends alone on the averments of the petition.

2. The history of this cause conclusively shows that the codefendants of the Chesapeake & Ohio Railway Company were joined for the purpose of avoiding the jurisdiction of this court. See 65 Fed. 138. But this alone would not justify the removal of the suit against the

Chesapeake & Ohio Railway Company. It must also appear, either, by the averments of the petition, that no cause of action is stated against the other codefendants, or that they are, in law, improperly joined, or it must be shown by proof that the averments of fact in the petition upon which the joint liability of the codefendants of the Chesapeake & Ohio Railway Company is asserted are so palpably untrue and unfounded as to make it improbable that the plaintiff could have inserted them in his petition in a bona fide belief that he could make proof of them on the trial. If a plaintiff has a good cause of action for a joint tort against several defendants, it is not fraudulent in him to join them all in his suit, even if it does appear that he would not have joined the resident defendants with the nonresident defendants except for the purpose of avoiding the jurisdiction of the federal court. Where he has reasonable ground for a bona fide belief in the facts upon which the liability of all the defendants depends, his motive in joining them cannot be questioned. It is only where he has not, in fact, a cause of action against the defendants, and has no reasonable ground for supposing that he has, and yet joins them, in order to evade the jurisdiction of the federal court, that the joinder can be said to be fraudulent, entitling the real defendant to a removal.

In Railroad Co. v. Wangelin, 132 U. S. 599, 10 Sup. Ct. 203, the suit was by the plaintiff, a citizen of Illinois, against the Louisville & Nashville Railroad Company, a corporation of Kentucky, and the Southeast & St. Louis Railway Company, a corporation of Illinois, in a state court of Illinois, for a trespass upon the plaintiff's land. The case was removed into the circuit court of the United States by the Louisville & Nashville Railroad Company, alleging a separate controversy between it and the plaintiff, and that its codefendant was not incorporated at the time the trespasses alleged in the declaration were committed, if at all. It was held that the cause of action alleged was a joint tort, and that the fact that the two defendants pleaded several defenses did not prevent the right of the plaintiff to continue its suit against them jointly, and did not create a separable controversy between the plaintiff and either of the defendants, for the purpose of removal under the act of March 3, 1875. Mr. Justice Gray used this language:

"It is equally well settled that, in any case, the question whether there is a separable controversy which will warrant a removal is to be determined by the condition of the record in the state court at the time of the filing of the petition for removal, independently of the allegations in that petition, or in the affidavit of the petitioner, unless the petitioner both alleges and proves that the defendants were wrongfully made joint defendants for the purpose of preventing a removal into the federal court."

And, in showing that the exception had no application to the case in hand, Mr. Justice Gray closed his opinion with the following sentence:

"As to the suggestion, made in argument, that the Southeast & St. Louis Railway Company was fraudulently joined as a defendant in the state court for the purpose of depriving the Louisville and Nashville Railroad Company of the right to remove the case into the circuit court of the United States, it is enough to say that no fraud was alleged in the petition for removal, or pleaded or offered to be proved in the circuit court."

In Plymouth Consol. Gold Min. Co. v. Amador & S. Canal Co., 118 U. S. 270, 6 Sup. Ct. 1034, in which a mining company and others were joined as defendants for polluting a stream of water belonging to the plaintiff, and the mining company sought to remove the case to the federal court, averring, in its petition for removal, that the other defendants, who were of the same state citizenship with the plaintiff, had been joined merely for the purpose of preventing the removal, Chief Justice Waite said:

"It is possible, also, that the company may be guilty, and the other defendants not guilty; but the plaintiff, in its complaint, says they are all guilty, and that presents the cause of action to be tried. Each party defends for himself; but, until his defense is made out, the case stands against him, and the rights of all must be governed accordingly. Under these circumstances, the averments in the petition that the defendants were wrongfully made to avoid a removal can be of no avail in the circuit court, upon a motion to remand, until they are proven; and that, so far as the present record discloses, was not attempted. The affirmative of this issue was on the petitioning defendant. That corporation was the moving party, and was bound to make out its case."

The necessary implication of these authorities is that, where fraudulent joinder of resident defendants is alleged in the petition, and the fraud is made out, a case is presented in which the removal of the case of the nonresident defendant to the federal court may be sustained. But it must appear that the allegations of joint liability were unfounded in fact, were not made in good faith, with the expectation of proving them at the trial, and were made solely for the purpose of evading the jurisdiction of the federal court. In this case, no attempt has been made to disprove, as palpably untrue, the averments of fact in the petition upon which a liability is claimed against the codefendants of the Chesapeake & Ohio Railway Company; and therefore it follows that if, on the facts alleged in the petition, a tort is shown upon which the Chesapeake & Ohio Railway Company and its codefendants may be jointly sued, the motive of the plaintiff in joining the codefendants of the railway company is immaterial, and cannot affect the right of the plaintiff to retain them as defendants in this suit. It should be noted that the question of fraud here is quite a different one from the question of fraud as it was presented on the motions to remand in the previous suit, brought on this same cause of action, the decision of which is reported in 65 Fed. 138. There the plaintiff, after having joined the defendants, had voluntarily dismissed them from the action before judgment, with the admission that he had joined them, not for the purpose of taking judgment against them, but merely to evade the jurisdiction of the United States court. After he had dismissed them, the cause was removed a second time to the United States court. It was then plainly within the federal jurisdiction but for the fact that the time had elapsed within which a removal could be had under the statute. It was held that the conduct of the plaintiff in joining defendants without a bona fide intention of proceeding to judgment against them, and merely for the purpose of preventing removal, estopped him from pleading the delay in removal which his conduct had necessitated, to defeat the right of removal. Here the plaintiff has not dismissed the defend-

ants, and, on the face of the record, there are citizens of the same state on both sides of the controversy. He has the right to proceed to a judgment against all the defendants, assuming that the facts stated make out a joint cause of action. If so, his motive in joining them, and in taking judgment against them, cannot be inquired into here.

3. We are therefore brought to the third ground urged by the defendants for overruling the motion to remand, namely, the question whether any cause of action is stated against the defendants other than the Chesapeake & Ohio Railway Company. We do not think that any cause of action is stated on the face of the petition against the Maysville & Big Sandy Railroad Company. The averment of the petition is that the plaintiff was a servant of the Chesapeake & Ohio Railway Company, and that he was injured through the negligence of the Chesapeake & Ohio Railway Company and its servants in allowing its machinery to remain in a defective condition, and that the accident occurred on the railroad of the Maysville & Big Sandy Railroad Company, which had leased to the Chesapeake & Ohio Railway Company its railroad without authority of law. The proposition of the plaintiff's counsel is that, where a railroad company, without authority of law, leases its property, to be operated by another railroad company, the lessor company is liable for all the torts of the lessee company. Such a proposition cannot be supported. The lessor company, by virtue of its charter, assumed the obligation to perform certain duties for the public in carrying freight and passengers, and in observing statutory precautions for the protection of the public from danger in the operation of its railroad. When it unlawfully shifts to another company the burden of the discharge of these duties to the public, any loss resulting to any member of the public from a failure by its lessee to discharge them may be made the basis for a claim for damages against the lessor company. The duty owing from the lessee company to its employés is, however, one which arises wholly from contract, and is not imposed by the charter of incorporation. The lessor company was not obliged to employ as a servant any particular members of the public. A person entering the service of the lessee company, therefore, acquired no right against the lessee except by virtue of the terms of employment. Such employé came into no privity of contract with the lessor company. No case has been cited to us in which it is held that the servant of the lessee company, operating under a void lease, can recover against the lessor company for injuries sustained by the negligence of the lessee company in the operation of the road. The only cases where liability in tort is enforced against the lessor company are those where the person injured is a member of the public, with the right to rely upon the discharge of the public duties assumed by the lessor company in the operation of the road. Such persons are shippers, who have a common-law right to demand of the common carrier that he shall carry their goods safely, passengers, who have a common-law right to demand of the common carrier that they shall be carried safely to their destination, and travelers upon the high-

way, who have a statutory and common-law right to such a reasonable and careful operation of the road as shall not unduly injure them in the pursuit of their lawful rights. The distinction is clearly marked in the decision of Judge Lurton in the case of Arrowsmith v. Railroad Co., 57 Fed. 165. In that case the court used this language:

"Where a railway company leases its line without authority of law, such lease is void; and it will continue liable for all the negligence of the lessee affecting the public."

The same limitation of liability under such circumstances is expressed by the court of appeals of New York in Abbott v. Railroad Co., 80 N. Y. 27. See, also, Railway Co. v. Curl, 28 Kan. 622; Freeman v. Railway Co. (Minn.) 10 N. W. 594; Railway Co. v. Brown, 17 Wall. 450; Railway Co. v. Winans, 17 How. 38; Harper v. Railroad Co., 90 Ky. 359, 14 S. W. 346. The exact question arose in the case of Railway Co. v. Culberson, 72 Tex. 375, 10 S. W. 706, where the distinction was fully considered, and, in an elaborate and very satisfactory opinion, it was held that a servant of the lessee railroad company, operating under a lease not authorized by the statute, who was injured while in the employ of the lessee company, could not hold the lessor company for damages for such injury. A similar conclusion was reached in the case of Hanna v. Railway Co. (88 Tenn. 310, 12 S. W. 718), in which it was held that a railroad company, which permitted a private person to move upon its track certain cars without authority of law or sanction of statute, assumed no responsibility to the employés of such private person for injuries sustained while in his service by reason of his negligence. The distinction above made was not considered or suggested in the opinion of this court in Hukill v. Chesapeake & O. Ry. Co., 65 Fed. 138, because it was unnecessary in reaching a conclusion there. So far, then, as the joinder of the Maysville & Big Sandy Railroad Company is used as a reason to oust the jurisdiction of this court, it must fail. Arrowsmith v. Railroad Co., 57 Fed. 165.

The next point made by the counsel for the railway company is that no case is stated against the defendant car inspectors. It is urged that nothing is charged against them but mere omission or nonfeasance in violation of their duty to their employer, and that, while this may subject the company to liability to the plaintiff for injuries suffered by him because of such nonfeasance, it gives him no right of action against them, for the reason that there is no relation of privity between him and them. Conceding the validity of the distinction by which a servant is held liable directly to a stranger only for positive conduct which the servant might reasonably anticipate would result in injury, and which did so while acting in the business of his master, and not for an entire failure to enter upon the master's business at all, the averments of the petition make it inapplicable here. The petition charges that the defendants (which includes the defendant car inspectors), with gross and wanton negligence, placed the car with the board projecting therefrom in a defective, unsafe, and dangerous condition, whereby the defendant was injured. This was

v.72F.no.6—48

misfeasance, because, but for their act in placing the car where it was, in its dangerous condition, the plaintiff would not have been injured. It is quite like the case considered by the supreme judicial court of Massachusetts in Osborne v. Morgan, 130 Mass. 102. There it was held that a servant who attached a block and tackle to the ceiling in the course of his employment, and did not sufficiently secure it to prevent its falling, was directly liable to a fellow servant who was injured by the fall. Chief Justice Gray, speaking for the court, said:

"It is often said, in the books, that an agent is responsible to third persons for misfeasance only, and not for nonfeasance. And it is doubtless true that, if an agent never does anything towards carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for nonfeasance. But, if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway, and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing; but it is misfeasance,—doing improperly."

In much the same way, when the car inspectors moved this car into a place where its defective condition would in all probability injure some one, they were doing something improperly, instead of doing nothing.

4. We come, now, to the fourth and last proposition upon which the removing defendant, the railway company, rests its right to invoke the jurisdiction of this court to try the suit against it. It is that, even if the natural defendants are liable to the plaintiff on the averments of the petition, yet they are not jointly liable with the removing defendant. We have considered, in the case of Warax v. Railway Co. (just decided) 72 Fed. 637, the question when a master and his servant may be joined in an action for the negligence of his servant; and we reached the conclusion that, unless it appeared that the master was present in person, directing the servant, or unless the work in which the servant was engaged was of a character that made the result complained of possible and probable, the liability of the master and servant was not joint. This was on the ground that the liability of the master and that of the servant arise on different principles. That of the master is based on public policy, while that of the servant depends on the simple law of trespass or direct injury. There is a similar distinction between the liability of the master and the servant in this case. The master's liability here arises from his implied contractual obligation to his servant to furnish a reasonably safe place in which, and reasonably safe appliances with which, to do his work. The liability of the servants charged as defendants in this case must arise from their personal and affirmative acts, directly causing the injury, as for trespass. No concert of action is alleged between the master and his servants in this case. On the contrary, the petition is full of allegations that, if the servants had done their duty to their master properly, no injury would have resulted to the plaintiff. It is true the petition charges

that all the defendants were guilty of joint negligence, and that all of them placed the car where it was in its defective condition; but, in the absence of a specific allegation that the defendant railway company was present, by some representative or superintending officer, we must assume that the company was only constructively present in the persons of its agents, the car inspectors and brakeman who are made codefendants, and that its liability is not based on anything akin to the personal interference of a natural master. The case of Campbell v. Sugar Co., 62 Me. 552, was a case in which the liability of the principal arose, as here, from a positive duty enjoined on him, and not simply from the public policy which makes the master liable for the negligence of his servant in and about his business; and yet it was there held that the master and servant were not properly joined unless actual concert of action, or something equivalent thereto, was shown. And a similar relation existed in the case stated by the court in Clark v. Fry, 8 Ohio St. 358, 377, between the master and servant, with respect to the character of the act made the basis of that action.

For these reasons, we hold that there was a misjoinder of the removing defendant with its codefendants, that the removing defendant has a right to have the suit against it tried in this court, and that the motion to remand, so far as the suit against it is concerned, must be denied.