HARTSHORN v. ATCHISON, T. & S. F. R. CO. et al.

(Circuit Court, W. D. Missouri, W. D. November 27, 1896.)

REMOVAL OF CAUSES—SEPARABLE CONTROVERSIES.

An employé of a nonresident railroad company brought action in a state court against the company and a resident contractor to recover damages for personal injury, caused by being struck by a water spout projecting from a tank, while engaged in his work as a brakeman. The tank had been constructed by the contractor for his own convenience in doing certain work for the company. The company having removed the cause into a federal court, plaintiff moved to remand on the ground that the cause of action was not severable. *Held*, that the misfeasance of the contractor gave an action in tort, while the company's liability arising from nonfeasance was dependent upon the implied contract of the master to provide the servant a reasonably safe place in which to perform his work; hence the causes of action were severable. Hukill v. Railroad Co., 72 Fed. 745, applied.

This was an action by W. H. Hartshorn against the Atchison, Topeka & Santa Fé Railroad Company and E. H. Bradbury to recover damages for personal injuries. The case was heard on a motion to remand to the state court from which it had been removed.

Warner, Dean, Gibson & McLeod, for plaintiff.
Gardner Lathrop and T. W. Moore, for defendants.

PHILIPS, District Judge. This suit was instituted in the circuit court of Jackson county, Mo., and on petition of the defendant the Atchison, Topeka & Santa Fé Railroad Company the cause was removed into this court. The plaintiff has filed a motion to remand, for the reason that, while the defendant railroad company is a nonresident corporation, the other defendant, Bradbury, is a resident citizen of this state and district, and that the cause of action is not separable. The substance of the petition is that the defendant railroad company owned and operated its line of railroad extending from Argentine, in the state of Kansas, through the states of Missouri, Iowa, and Illinois, to the city of Chicago. It then avers that the defendant Bradbury, on or about the dates thereinafter mentioned, was engaged for and at the instance and request of the defendant railroad company in grading and filling in with dirt a part of the trestle approach to the bridge near Sibley in Jackson county, Mo., and that in the performance of said work said Bradbury used a steam shovel operated by him upon the roadbed and rails of the railroad company; that, for the supplying of water to the said steam shovel, he constructed upon the right of way of the said railroad company a water tank, from which projected a water spout so near to the railroad track as to render it dangerous to anyone having occasion to pass on top of a freight car from the outside thereof; and about the

7th day of March, 1896, the plaintiff, an employé of defendant, without knowledge of the proximity of said spout, in climbing up on the outside of the car to the top thereof in order to reach the brakes thereon, was struck by the said waterspout, and injured.    To inculpate the defendant railroad company, the petition alleges that said injury was the result of the negligence and carelessness of the defendants, and each of them, in constructing said water tank and spout, and in permitting the same to be constructed, upon the right of way of said defendant company so near to the main track, and in not warning and instructing the plaintiff of the location thereof, and the danger therefrom to the plaintiff; "all of which acts, doings, and omissions, and the danger to plaintiff arising therefrom, said defendants, and each of them, knew, or by the exercise of reasonable care might have known."    The petition is not distinct as to the exact relation of the defendant Bradbury to the railroad company in doing said work.    It does not affirmatively appear that he was an independent contractor undertaking said work under a special contract. If his relation to the railroad company was that of an independent contractor, the company would not be liable for injury resulting from his willful or negligent acts in the manner of performing the work. The liability of the railroad company for injury resulting from the misfeasance of Bradbury can only arise out of the relation of master and servant.    In view of the phraseology of the averment of the petition, which is that Bradbury was engaged for and at the instance and request of the defendant in performing certain work upon its railroad line, it is perhaps the better legal conclusion that he was doing it as an employé of the defendant company; in other words, as its servant.    Prima facie, a person found doing a service for another is in the other's employ.    Wood, Mast. & Serv. 584; Perry v. Ford, 17 Mo. App. 212.

In this view of the case, what is the liability of the defendant railroad for the misconduct of the defendant Bradbury in constructing the water tank and spout dangerously near to the railroad track? From the averments of the petition it does not appear that the company did more than to engage Bradbury to do the grading and filling in of the trestle approach to the bridge.    The manner in which he should perform the work, the machinery and instruments to be employed in its construction, do not appear to have been directed by the company.    On the contrary, the reasonable inference is that the construction of the water tank and spout were upon motion of Bradbury and for his convenience.    The construction of the water tank and the spout not appearing to have been done by the direction of the railway company, and there being no necessity for its construction at a point so near the railroad track, it cannot be said that the thing done by the servant was necessarily implied by reason of his agency, or as essential or incidental to the nature and character of his employment.    His act, therefore, in so constructing and maintaining the tank and water spout, was a positive action, and in the nature of a misfeasance; and the only liability of the railroad company would be that of nonaction or noninterference after notice to it of the dangerous proximity of the water spout to the railroad track.

Under such state of facts the liability of the defendant railroad company to the plaintiff springs solely from the relation of master and servant, and is dependent upon the doctrine of respondeat superior. The form of action, therefore, on the part of plaintiff against the defendant railroad company, would at common law be an action on the case; while the liability of Bradbury to the plaintiff would spring from his willful act in constructing the dangerous obstacle so near to the railroad track as to endanger the lives and limbs of employés on the railroad performing a duty similar to that ascribed to plaintiff, and the form of action against him would be trespass vi et armis. In such contingency, according to the rule laid down in Warax v. Railway Co., 72 Fed. 637, the action by the plaintiff against two such wrongdoers would not be joint, but several.    On the other hand, giving to the averments of the petition their most favorable construction to the pleader, the liability of the defendant Bradbury for the injury in question rests upon his positive wrongful act in erecting a dangerous obstacle near to the railroad track, and the liability of the railroad company to the plaintiff as an employé in its service would spring from the obligation imposed upon the master to provide the servant with a reasonably safe place in which to perform his work.    In this respect, the facts of the case disclosed by the petition are not distinguishable in principle from those of Hukill v. Railroad Co., 72 Fed. 745.    The petition in that case was lodged against the Maysville & Big Sandy Railroad Company, the Chesapeake & Ohio Railway Company, and five other persons who were in the employ of the Chesapeake, etc., Railway Company.    The railroad belonged to the Maysville, etc., Railroad Company, which it had leased to the Chesapeake, etc., Railway Company, and the plaintiff's intestate was in the employ of the Chesapeake Railway Company as one of the crew connected with the switching of locomotives. While at work about a train of freight cars, Hukill was struck by a board projecting from the roof of another train of freight cars of said company, and was killed.    The petition alleged that the projecting board was on the roof of said car, and for a long time it constituted a defect endangering the bodies and lives of the employés of said railroad company, and that said car with said projection was placed by the defendants (meaning the said railroad company and the other defendants) where the said Hukill was struck by said board, and that the said defendants, with wanton negligence, permitted said defective car to remain where the same was, and wantonly and negligently failed to remedy said defect; that the other defendants, employés of the Chesapeake Railway Company, as car inspectors and repairers, inspected said car from which said board projected long before the decedent was knocked down thereby, and had knowledge of this defect long prior to the injury, and had ample time in which to remedy the same.    The cause was removed from the state court into the federal court of Kentucky on the petition of the Chesapeake Railway Company.    It was again held, following the Case of Warax, that the cause of action was separable, and therefore removable upon the petition of the Chesapeake Railway Company.    The court, composed of Judges Taft and Lurton, said:

"The master's liability here arises from his implied contractual obligation to his servant to furnish a reasonably safe place in which, and reasonably safe appliances with which, to do his work. The liability of the servants charged as defendants in this case was to arise from their personal and affirmative acts directly causing the injury, as for trespass. No concert of action is alleged between the master and his servants in this case. On the contrary, the petition is full of allegations that, if the servants had done their duty to their master properly, no injury would have resulted to the plaintiff. It is true, the petition charges that all of the defendants were guilty of joint negligence, and that all of them placed the car where it was in its defective condition; but, in the absence of a specific allegation that the defendant railroad company was present by some representative or superintending officer, we must assume that the company was only constructively present in the presence of its agents, the car inspectors and brakemen, who are made codefendants, and that its liability is not based on anything akin to the personal interference of a natural master."

So, in the case at bar, in the physical causation there was no actual concurrence or concert of action among these defendants. By reason of the act of Bradbury in placing the water spout where he did, the injury came to plaintiff, unaided, and in no degree promoted, by any movement or encouragement of the railway company. Therefore, there were no two forces put in motion, one by one defendant and the other by the other defendant, which coacted in producing the given result. The misfeasance of Bradbury was the vis major which singly and alone wrought the mischief to the plaintiff, and gave him an action in tort against Bradbury, independent of any contractual relation; while the railway company's liability is wholly constructive, dependent on a contract obligation which the law implies from the relation of master and servant. It seems to me, therefore, illogical to say that this cause of action is not severable because of the concurring torts of two defendants, when the act of one was positive, a misfeasance, and the other was negative, a nonfeasance, and the liability of one arises ex delicto and the other ex contractu; that is, it must depend upon a contractual relation between master and servant. And the right of severance ought the more especially to exist in a case like this, where the misfeasance of Bradbury was wholly independent of, and, as between him and the railway company, was not promoted by, the company, and where the injury resulting from Bradbury's tort was complete without any act of the company other than of omission in failing to do something independent of Bradbury. It is to be conceded to the contention of the learned counsel for plaintiff that there is on this question of procedure a division of opinion among respectable courts; but, in my humble judgment, the conclusion reached by Judges Taft and Lurton rests upon the better reason, and, in the absence of a ruling more obligatory upon this court of trial, their judgment will be followed. It results that the motion to remand is denied.