SHAFFER v. UNION BRICK CO. et al.

(Circuit Court, D. Kansas, Third Division. March 12, 1904.)

No. 326.

1. NEGLIGENCE OF SERVANT—LIABILITY OF MASTER.

To constitute a joint liability of master and servant for the negligence of the servant, there must be actual negligence, as contradistinguished from imputed negligence, of the master concurring with an act negligently committed by the servant.

(Syllabus by the Court.)

At Law.

This is a motion by plaintiff to remand the case to the state court, from whence it came for want of jurisdiction in this court.

The action was brought in the district court of Allen county by plaintiff to recover damages jointly from defendants for negligently causing the death of her husband, David C. Shaffer, while in the employ of the defendant brick company. The petition alleges deceased, when injured, was operating what is known as a "dry pan"; that it was his duty to oil the machinery operating such pan immediately before commencing work; while doing so, under the direction of defendant Ratliff, an employé of the defendant brick company, the machinery was suddenly started by Ratliff removing a clutch; that deceased was caught in the machinery, and received injuries resulting in his death; that the machinery was started by Ratliff, who at the time knew, or should have known, the deceased was in a dangerous position, and likely to receive injuries therefrom.

The specific acts of negligence alleged against defendant the Union Brick Company are:

"(a) In failing to provide the best and latest improved machinery of the kind necessary for the purpose for which the machinery hereinbefore described was used by it; that said machinery not being the latest improved and standard machinery for such use, and not having the latest and best methods for providing safety to employés in operating it.

"(b) It was further negligent in not providing a system of guard rails or covering over and around said cogwheels for the purpose of preventing any one in oiling said machinery or in operating it from falling upon or into said cogwheels while in motion.

"(c) It was further negligent in starting said machinery, or causing it to be started, by its said foreman and codefendant, J. T. Ratliff, acting for it and in its behalf and by its direction, while said deceased, David C. Shaffer, was close to or upon said cogwheel, in the act of oiling it, as hereinbefore stated.

"(d) It was further negligent in not providing a gong or means of making a loud noise for the purpose of warning any and all employés, and more especially deceased, of the intention of any one to start said machinery, so that such employés, and more especially deceased, might have been warned, avoiding death or injury from the starting of said machinery.

"(e) That it was further negligent in causing said machinery to be started by its said codefendant, J. T. Ratliff, at the time and place hereinbefore mentioned, without giving deceased warning of such intention, said defendant J. T. Ratliff so acting for and in behalf of his codefendant, the Union Brick Company, being at the time he started said machinery in a position to have easily seen deceased at the place where he was, and to have easily given him warning of his intention to start such machinery."

The act of negligence alleged against defendant J. T. Ratliff is:

"That said defendant J. T. Ratliff was negligent in carelessly and negligently starting said machinery in operation by the use of said clutch when he knew, or by the exercise of reasonable care and prudence might have

¶ 1. See Master and Servant, vol. 34, Cent. Dig. § 1238.

128 F.—7

known, that deceased was in a place where the starting of said machinery would cause his death or cause him great bodily injury, and in so starting said machinery without giving warning to deceased of his intention to so start such machinery, as hereinbefore stated."

It is further alleged in the petition that the Union Brick Company is a foreign corporation, organized and incorporated under the laws of the state of Wyoming, and that defendant Ratliff was, at the date of the injury, foreman and assistant manager of the business of the brick company.

The case was seasonably removed into this court upon petition of the brick company. The petition for removal alleges the facts necessary to show jurisdiction in this court; avers the existence of a separable controversy between plaintiff and defendant brick company; also alleges Ratliff, a citizen and resident of this state, to have been fraudulently made a party defendant to the action for the sole and only purpose of defeating the right of the brick company to remove the cause into this court.

Ewing, Gard & Gard, for plaintiff.
Campbell & Goshorn and Moore & Berger, for defendant the Union Brick Company.

POLLOCK, District Judge (after stating the facts as above). The petition is framed on the theory that defendants are joint wrongdoers, and jointly liable in damages for the death of David C. Shaffer. If so, the case is not removable into this court. Powers v. Chesapeake & Ohio Railway, 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; Louisville, etc., Railroad Co. v. Wangelin, 132 U. S. 599, 10 Sup. Ct. 203, 33 L. Ed. 473; Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. 1034, 1161, 29 L. Ed. 331; Sloane v. Anderson, 117 U. S. 275, 6 Sup. Ct. 730, 29 L. Ed. 899.

It is alleged in the petition for removal filed herein that Ratliff, a citizen and resident of the state of Kansas, was made party defendant for the sole and only purpose of defeating a removal of the case from the state court into this court, but such allegation cannot have effect in this case for two reasons: First, it is not supported by proof. In Warax v. Cincinnati, N. O. & T. P. Ry. Co. (C. C.) 72 Fed. 637, it is said:

"In order that such joinder should be regarded as fraudulent, it must appear, by allegation and proof, not only that it was made for the purpose of avoiding the jurisdiction of the federal court, but also that the averments of the petition upon which the right to join the defendants is claimed are so unfounded and incapable of proof as to justify the inference that they were not made in good faith, with the hope and intention of proving them, or else that they do not state a joint cause of action."

Again, it is well settled, if the plaintiff alleges a joint cause of action against the defendants in her petition filed in the state court, and one or more of such defendants are citizens of the state, a nonresident defendant may not remove the case into this court. In Powers v. Chesapeake & Ohio Railway, supra, it is said:

"It is well settled that an action of tort, which might have been brought against many persons or against any one or more of them, and which is brought in a state court against all jointly, contains no separate controversy which will authorize its removal by some of the defendants into the Circuit Court of the United States, even if they file separate answers and set up different defenses from the other defendants, and alleges that they are not jointly liable with them, and that their own controversy with the plaintiff is a separate one; for, as this court has often said, 'A defendant has no right to say that an action shall be several which the plaintiff seeks to make joint.'

A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right of prosecuting his suit to a final decision in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings."

In Louisville, etc., Railroad Co. v. Wangelin, supra, it is said to be equally well settled—

"That in any case the question whether there is a separable controversy which will warrant a removal is to be determined by the condition of the record in the state court at the time of the filing of the petition for removal, independently of the allegations in that petition or in the affidavit of the petitioner, unless the petitioner both alleges and proves that defendants were wrongfully made joint defendants for the purpose of preventing a removal into the federal court."

In other words, the authorities hold that, if plaintiff has in law a joint cause of action against both defendants, she may join them in one action, and no wrong or fraudulent motive will be imputed to her, though the result of her action be to prevent a removal by the non-resident defendant.

Hence the only question of merit arising upon this motion for determination is, does the plaintiff allege in her petition a joint cause of action against both defendants? If so, the motion to remand must be granted.

The almost universal practice in vogue of late years, and more especially since the decision of the Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121 (decided in October, 1900), of joining a local resident defendant, like an engineer, fireman, brakeman, or other employé, with the nonresident master, to prevent the removal by the master from the state to the federal court, demands a consideration and determination of this question upon principles alike applicable to all this class of cases. Doubtless there are cases of this character where the allegations of joint liability are so ridiculous or absurd upon their face that the court would be justified, from a simple inspection of the record, in holding that no joint liability does or could exist in the case. Again, no doubt there are cases in which it might be alleged in the petition for removal, and shown by proof, that a resident employé was fraudulently joined with a nonresident master for the sole purpose of preventing removal of the case by the master; but in comparison with the great body of litigation upon this question such cases are quite infrequent in occurrence, and depend more upon the ingenuity and skill of the pleader drafting the petition than the true circumstances of the particular case. It is manifestly both unsafe and unsound to allow the ultimate determination of the right of removal from the state to the federal courts to rest upon the ingenuity of counsel drafting the pleadings; for, as said by Mr. Justice Miller in Board of County Com'rs v. Kansas Pac. Ry. Co., 4 Dill. 277, Fed. Cas. No. 502:

"It would be a very dangerous doctrine—one utterly destructive of the right which a man has to go into the federal courts on account of his citizenship— if the plaintiff in the case, in instituting his suit, can, without any right or reason or just cause, join persons who have not the requisite citizenship, and thereby destroy the rights of parties in federal courts. We must therefore

be astute not to permit devices to become successful which are used for the very purpose of destroying that right."

. As the right of the nonresident master, joined in an action to recover damages for negligence with the resident servant charged with committing the act of negligence, to remove the action from the state into the federal court must be tested by the petition of the plaintiff filed in the state court, the broad general proposition for consideration is, under what circumstances may such joinder be made? In what case does a joint liability on the part of the master and negligent servant exist in law? In principle and upon authority, as gathered from the law writers and adjudicated cases upon this proposition, is the master jointly liable with his negligent servant in all cases or in any case? If so, what is the reason for such joint liability or nonliability, in the absence of statutory enactment upon the subject?

I am persuaded from an examination of the authorities that its solution must depend upon the character of the act charged as negligent, and the fundamental distinction between the nature or ground, in law, of the liability of the master and that of the servant for an injury resulting to a third person in consequence of the negligent act of a servant done in the performance of the master's business. In order that there may be a joint liability of master and servant, there must be actual negligence as contradistinguished from imputed negligence of the master, concurring with an act negligently committed by the servant. In common parlance, it is said the negligence of the servant occurring in the discharge of his master's business, to the injury of another, is the negligence of the master. This statement, for practical purposes, is true, but it is inaccurate. For such negligence of the servant the master is legally liable, but such liability may rest either on grounds of public policy, or upon the ground that the master is liable for his own wrongdoing. The servant may or may not be liable, depending upon the nature of the act performed. For example, a servant may wholly fail to perform any of the duties imposed upon him by the master. Injury resulting to a third person from such failure, the master will be responsible to the injured third person. The servant will not be liable to such third person, but to the master only. In such case there is no joint liability, because the master alone is liable. Again, the servant may violate the express directions of his master, or may commit an act of negligence to the injury of a third person without the knowledge or direction of his master. In such case both the servant and the master will be liable to such injured third party—the servant, for negligence in the performance of his duty; the master, because on grounds of public policy the law imputes to him and holds him responsible for the negligence of his servant, and this although the negligent act of the servant may have been performed against his express direction and command. In such case the liability is several, not joint. Again, the negligent act of the servant complained of may be done in the presence of the master and under his direction, or in the absence of the master, in pursuance of his express direction or command. In such case both servant and master are liable to an injured third party, and both are negligent in fact, and liable because they are negligent. In such case the cause of action against both is for negli-

gence in fact, and such cause of action may be joint or several, at the election of the party injured.

While the authorities are not in harmony upon this proposition, yet the great weight of authority and the very reason of the matter leads inevitably to the conclusions stated, as a brief review of the authorities will show.

Pomeroy in his work on Code Remedies, § 307, says:

"The common-law doctrines concerning the liability of tort feasors, and as to the joinder or separation of them in actions brought to recover damages for the wrong, are entirely unchanged by the new system of procedure. It is unnecessary to repeat these ancient rules; that they are still in operation, with their full force and effect, is sufficiently shown by the following particular instances: In general, those who have united in the commission of a tort to the person or to property, whether the injury be done by force, or be the result of negligence or want of skill, or of fraud and deceit, are liable to the injured party without any restriction or limit upon his choice of defendants against whom he may proceed. * * * In order, however, that the general rule thus stated should apply, and a union of wrongdoers in one action be possible, there must be some community in the wrongdoing among the parties who are to be united as codefendants; the injury must in some sense be their joint work. It is not enough that the injured party has on certain grounds a cause of action against one for the physical tort done to himself or his property, and has, on entirely different grounds, a cause of action against another for the same physical tort. There must be something more than the existence of two separate causes of action for the same act or default to enable him to join the two parties liable in the single action. This principle is of universal application."

Bliss in his work on Code Pleading, § 83, says:

"Persons are not jointly liable for a tort merely because they have some connection with it, even if it be such as to give a cause of action against them. There must be some co-operation in fact. There must be some community in the wrongdoing among the parties who are united as codefendants. The injury must be in some sense their joint work."

In the case of Mulchey v. Society, 125 Mass. 487, it is said:

"But the jury should have been instructed, as requested by the defendants, that this action, being in the nature of an action on the case, could not be sustained against both the society and its agents. If there was any negligence in the agents, Barber and Sleeper, for which they could be held liable, their principal, the society, would be responsible, not as if the negligence had been its own, but because the law made it answerable for the acts of its agents. Such negligence would be neither in fact nor in legal intendment the joint act of the principal and of the agents, and therefore both could not be jointly sued. It is not like the case of a willful injury done by an agent by the command or authority of his principal, in which both are in law principal trespassers, and therefore jointly liable."

In the case of Campbell v. Sugar Co., 62 Me. 553, 16 Am. Rep. 503, it is said:

"But it does not thence follow that they are jointly responsible. The question whether they may be so held is a somewhat nice one, but there are substantial reasons assigned in Parsons v. Winchell, 5 Cush. 592, 52 Am. Dec. 745, why the principal and agent should not be charged jointly in such a case. It is not, properly speaking, their joint act or neglect which causes the injury. The proper adjustment of the final responsibility as between themselves cannot well be effected if one who has distinct grounds of action against them—against the agents for their own negligence, against the principals because the law makes them responsible for the negligence of their agents—is permitted to recover against both in one suit."

In the case of Clark v. Fry, 8 Ohio St. 358, 72 Am. Dec. 590, it is said:

"But whether the liability to the defendant in error, if any exist, attached to Freeman alone, or to Clark for the negligence of his servant or agent, or to Clark and Freeman as joint tort feasors, depended upon a legal question arising upon the relation between Clark and Freeman in respect to the transaction alleged as the occasion of the injury. If the excavation had been ipso facto unlawful, as an unnecessary encroachment on the street, Clark and Freeman would have been liable, if any liability existed, jointly as wrongdoers. But if there was nothing in the work that Clark had required by the contract to be done which was in itself unlawful, or which, properly done, could be the occasion of an injury to any one, and Freeman, wholly free from the control of Clark as to manner of doing the work, had by his own wrongful and negligent conduct been the cause of the injury, he alone would be liable. If, however, Freeman, acting under the control and direction of Clark, as his servant or agent, had negligently and wrongfully allowed the excavation to be in an unfenced or, otherwise dangerous condition, whereby the injury was sustained, Clark would be liable, although not jointly, with Freeman. In this last instance supposed either Clark or Freeman might be sued separately; but inasmuch as Clark, although he could not excuse himself on the ground that the nuisance had been occasioned by the negligence of Freeman, would have a right of action against Freeman for the recovery of such damages as he might be compelled to pay by reason of his negligence, he (Clark) could not be joined in the same action with Freeman. This doctrine was expressly ruled in Parsons v. Winchell, 5 Cush. 592 [52 Am. Dec. 745], and appears to rest upon a reason which is entirely satisfactory."

In the case of Warax v. Cincinnati, N. O. & T. P. Ry. Co. (C. C.) 72 Fed. 637, Judge Taft, after quoting from Pollock on Torts (4th Ed.) p. 70, says:

"It will thus be seen that the master is not held on any theory that he personally interferes to cause the injury. It is simply on the ground of public policy, which requires that he shall be held responsible for the acts of those whom he employs, done in and about his business, even though such acts are directly in conflict with the orders which he has given them on the subject. The liability of the servant, on the other hand, arises wholly because of his personal act in doing the wrong. It does not grow out of the relation of master and servant, and does not exist at all, unless it would also exist for the same act when committed, not as the servant, but as the principal. Liabilities created on two such wholly different grounds cannot and ought not to be joint."

In the case of Helms v. Northern Pac. Ry. Co. (C. C.) 120 Fed. 395, it is said:

"For the purpose of determining the liability of the master for the negligence of the servant, it is common to say that the negligence of the servant is the negligence of the master. This, however, is a convenient rather than an accurate statement. The master is in fact negligent only when he participates in the wrongful act of his employé. This he can only do in one of three ways: (1) By direct participation; (2) by previous direction; (3) by subsequent adoption. In the case at bar, as is usual in suits of this character, there is no contention that the corporation was in fact a party in either of these respects to the negligence complained of. To say that because the master is responsible for the negligence of his agent he is therefore himself negligent is to confuse things that are widely different."

As supporting the views herein expressed, see, also, Hukill v. Maysville & B. S. R. Co. (C. C.) 72 Fed. 745; Beutel v. Railroad Co. (C. C.) 26 Fed. 50; Fergason v. Railway Co. (C. C.) 63 Fed. 177; Hartshorn v. Railroad Co. (C. C.) 77 Fed. 9; Page v. Parker, 40 N. H. 68; Bailey v. Bussing, 37 Conn. 349. As holding a contrary view, see Charman

v. Railroad Co. (C. C.) 105 Fed. 499; Riser v. Railroad Co. (C. C.) 116
Fed. 215; Wright v. Wilcox, 19 Wend. 343, 32 Am. Dec. 501.   Nor
is it thought the views herein expressed are in conflict with the decision
made by the Supreme Court in Chesapeake & Ohio Ry. Co. v. Dixon,
supra.   That action was brought by Mrs. Dixon to recover damages
for the wrongful death of her husband against the railway company,
a foreign corporation, and the resident engineer and fireman in charge
of the train, in a state court in Kentucky, under the provisions of a
statute of that state which reads as follows:

"Whenever the death of a person shall result from an injury inflicted by
negligence or wrongful act, then, in every such case, damages may be recovered
for such death from the person or persons, company or companies, corporation
or corporations, their agents or servants, causing the same, and when the act
is willful, or the negligence is gross, punitive damages may be recovered, and
the action to recover such damages shall be prosecuted by the personal repre-
sentative of the deceased." Ky. St. 1903, § 6.

The petition alleged negligence in the following language:

"At the time and place when and where plaintiff's intestate was injured, as
aforesaid, the defendants R. H. Chalkey and Wm. Sidles were, and for a long
time theretofore had been, servants of the corporate defendants, in charge and
control of said train, and then and there were, and for a long time theretofore
had continuously been, respectively, engineer and fireman of said train, and
said negligence of the corporate defendant was done by and through its said
servant and other of its servants, then and there in its employment, and said
negligence was the joint negligence of all the defendants."

The railroad company filed its petition and bond for removal from
the state to the federal court.   The state court refused to order a re-
moval of the case.   Thereupon the railway company answered, and
went to trial in the state court.   A judgment entered in favor of plain-
tiff against all the defendants was affirmed in the court of appeals of
that state, that court holding the petition stated a joint cause of action
against all the defendants.   The case was carried to the Supreme Court
on the question of jurisdiction.   In passing on the case the Chief
Justice, delivering the opinion of the court, recognizes the principles
hereinbefore stated, as follows:

"The contention of counsel is that this complaint charged neither direct nor
concurrent nor concerted action on the part of all the defendants, but counted
merely on the negligence of the employés.  If the complaint should be so con-
strued, the question would still remain whether the cause of action was not
entire as the case stood, and the objection of the difference in the character
of the liability matter of defense, which might force an election, or defeat the
action as to one of the parties.  The cause of action manifestly comprised
every fact which plaintiff was obliged to prove in order to obtain judgment,
or, conversely, every fact which defendants would have the right to traverse.
And, on the principle of the identification of the master with the servant, it
would seem that there was no fact which the company could traverse which its
codefendants, being its employés, could not.  At all events, a judgment against
all could not afterwards be attacked for the first time on this ground.
"But does the complaint bear the construction the company puts upon it?
The pleader did not set forth, and according to the decision of the Court of
Appeals this was not material, the specific acts of negligence complained of.
It was stated that the negligence of the corporate defendant was done by and
through its said servants and other of its servants then and there in its em-
ployment, and said negligence was the joint negligence of all the defendants.
Assuming this averment to be inconsistent with a charge of direct action by
the company, it may nevertheless be held to amount to a charge of concurrent

action when coupled with the previous averment that Dixon was killed while crossing the track at a turnpike crossing by the negligence of the company and the other defendants in charge of the train. The negligence may have consisted in that the train was run at too great speed, and in that proper signals of its approach were not given; and if the speed was permitted by the company's rules, or not forbidden, though dangerous, the negligence in that particular and in the omission of signals would be concurrent. Other grounds of concurring negligence may be imagined. And where concurrent negligence is charged the controversy is not separable. * * * Our conclusion is that it cannot properly be held that it appeared on the face of this pleading, as matter of law, that the cause of action was not entire, or that a separable controversy was presented."

Applying the principles deducible from the foregoing authorities to the case at bar, it becomes clear no joint liability of the defendant brick company and its employé Ratliff is alleged in the petition. The statute under which this action was brought reads:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission." Gen. St. Kan. 1901, § 4871.

It will be noted, from the specific acts of negligence quoted from the petition, the defendant brick company is not charged with participating in or directing the act of negligence alleged against the employé Ratliff. If liability for such act attaches to the brick company at all, it is on grounds of public policy, and not for actual wrongdoing by the company through its managing officers. On the one hand, the liability of the employé Ratliff is direct and proximate—is a liability for his negligence or wrongdoing. It neither arises from nor is in any way dependent upon his connection with the defendant company. He is not concerned in or affected by any other ground of negligence alleged in the petition against the defendant company. On the other hand, the liability of the brick company for the negligent act of its employé Ratliff is indirect, and contingent upon it being first shown he was acting for the company. It is not a liability for negligence of the company, but a liability created by the policy of the law.

Again, under the allegations of the petition, the proof necessary to establish the liability of the defendant brick company differs materially and essentially from that required to fix the liability of the employé Ratliff. It is possible to establish the liability of the employé Ratliff in this case without showing any connection between him and his codefendant.

The ground of liability of the defendant brick company to plaintiff for the negligent act of its employé Ratliff, as alleged in the petition, being essentially and inherently different from the liability of the employé for his own wrongful act, and the proof necessary to establish the liability of the brick company to plaintiff being radically different from that required to establish the liability of its employé to plaintiff, it must be held no joint liability to plaintiff exists.

Therefore, under the allegations of plaintiff's petition, the motion to remand will be denied.