**Gregory T. Van Meter, Administrator, Appellee, v. Fred C. Gurney et al., Appellants.**

### Gen. No. 29,870.

1. SAVING QUESTIONS FOR REVIEW—*necessity for making claim of variance between proof and declaration during trial.* A question of variance between the proof and the declaration is not saved for review unless specifically pointed out on the trial.

2. APPEAL AND ERROR—*questions raised by objection that case proved was predicated upon a theory of liability not claimed in declaration.* A contention that a declaration stated a cause of action against defendants as joint tort feasors and not one based upon the relation of master and servant, while the proof adduced was all to the point that if the defendants were liable at all, they

were liable under the doctrine *respondeat superior,* while involving a question of variance, also includes the question whether the cause of action alleged in the declaration is supported by the proof.

3. SAVING QUESTIONS FOR REVIEW—*motions to direct verdict for defendants as questioning sufficiency of evidence to sustain cause of action alleged.* The question whether the proof sustains the cause of action alleged in a declaration is saved for review by defendants' motion at the close of plaintiff's evidence to direct a verdict for defendants and a renewal of such motion at the close of all the evidence.

4. APPEAL AND ERROR—*presumptions in favor of construction of declaration conforming to case made by proof.* Where it is urged, on appeal, that a declaration does not allege the existence of the relation of master and servant between the defendants, and that the proof makes out a case resting wholly upon the existence of that relation, the reviewing court, in determining the nature of the case alleged, will indulge every reasonable presumption and intendment in favor of the declaration, since it is to be tested as after verdict and not as if on demurrer.

5. MASTER AND SERVANT—*declaration in action for injury to third person as charging liability as joint tort feasors rather than on doctrine respondeat superior.* Declaration in an action against a police captain and his chauffeur, the latter a patrolman assigned to drive the captain's automobile, for negligently causing the death of a pedestrian, held to allege a cause of action against the defendants as joint tort feasors only, and not to allege facts sufficient to establish the relation of master and servant between such defendants as predicate for a cause of action based upon the doctrine *respondeat superior.*

6. MASTER AND SERVANT—*scope of master's liability under doctrine respondeat superior.* Under the doctrine *respondeat superior* the master is liable for every negligent act of his servant, where the act was within the scope of the servant's duties, whether the master was negligent in fact or whether the negligence of the servant is imputed to the master on the ground of public policy.

7. MASTER AND SERVANT—*applicability of doctrine respondeat superior where master and servant also liable as joint tort feasors.* The fact that a master has so participated in a negligent act of his servant that they may properly be held liable therefor as joint tort feasors does not destroy the relation between them nor terminate the master's liability under the doctrine *respondeat superior.*

8. MASTER AND SERVANT—*joint negligence of master and servant in action for wrongful death by negligence in operation of automobile as question of fact for jury.* In an action against a police captain and his chauffeur, the latter a patrolman assigned to drive

the captain's automobile, charging them with joint negligence resulting in the death of a pedestrian, evidence held to make it a question of fact for the jury whether the captain was jointly negligent with his chauffeur in that, being present in the automobile at the time of the accident, he failed, as the principal or master of the chauffeur, to exercise the supervision and control over the driver that ordinary prudence required in the circumstances.

9. MASTER AND SERVANT—*sufficiency of evidence, in action for wrongful death against master and servant, to show joint negligence of defendants.* Evidence in an action against a police captain and his chauffeur, a patrolman assigned to drive the car, based upon their alleged joint negligence in so driving the automobile as to cause the death of a pedestrian, held sufficient to sustain the finding of the jury that the defendants were jointly negligent as alleged.

10. APPEAL AND ERROR—*presumption as to influence of belief of jury, as disclosed by special verdict, upon their general verdict.* The court cannot legitimately presume, on review, that a general verdict against defendants charged as joint tort feasors is based upon the belief of the jury that they were guilty of wanton and wilful negligence, merely because the jury, in answer to special interrogatories, found them guilty of wanton and wilful negligence.

11. EVIDENCE—*presumptive knowledge of automobile drivers as provisions of Motor Vehicle Act regarding speed.* Drivers of automobiles are presumed to know the provisions of the Motor Vehicle Act in regard to the rates of speed of automobiles.

12. APPEAL AND ERROR—*presumptions as to general and special verdicts.* While all reasonable presumptions will be indulged in favor of a general verdict, nothing will be presumed in aid of a special finding.

13. APPEAL AND ERROR—*presumption as to award of damages in conformity with instructions.* Where the jury in an action for wrongful death were instructed, if they found against defendants, to assess the damages "at such sum as they shall believe, from the evidence, fair and just compensation, based upon the pecuniary loss, if any, resulting from the death," but while fairly and fully instructed upon the question of wanton and wilful negligence, were not instructed upon the theory of exemplary or vindictive damages, it cannot be presumed, on appeal, that the jury included exemplary or vindictive damages in their general verdict for plaintiff, even though the presumption be indulged that the general verdict was based upon the belief of the jury, as shown by their special findings to that effect, that the defendants were guilty of wanton and wilful negligence.

14. DEATH BY WRONGFUL ACT—*sufficiency of declaration to support findings of wanton and wilful negligence.* Declaration in an action for wrongful death held sufficient to support special findings of wanton and wilful negligence, where it included allegations that the automobile was being operated in a wanton, reckless and malicious manner "without any regard for the life of the deceased."

15. DEATH BY WRONGFUL ACT—*sufficiency of evidence to support findings of wanton and wilful negligence.* Findings that the defendants in an action for wrongful death were guilty of wanton and wilful negligence held not manifestly against the weight of the evidence.

16. EVIDENCE—*admissions of party as competent substantive evidence when offered by opposing party.* Admissions of a party to a suit are always competent and admissible as substantive evidence when offered by the opposite party, and evidence of such admissions is not subject to the objection that it is hearsay.

17. MASTER AND SERVANT—*testimony as to statements by alleged master as competent to establish existence of relation.* Testimony of witnesses as to statements made after an accident by one of two defendants jointly charged with responsibility therefor, was competent substantive evidence to establish that the other defendant was the servant of the defendant making such statements.

18. MASTER AND SERVANT—*sufficiency of evidence, in action for injury to third person, to show existence of relation of master and servant between defendants.* In an action for wrongful death alleged to have been caused by the joint negligence of the defendants, evidence held to show that the relation of master and servant existed between such defendants.

19. APPEAL AND ERROR—*harmlessness of exclusion of evidence as to issue where fact clearly established by other evidence.* Where the evidence in action for wrongful death clearly showed that the relation of master and servant existed between the defendants jointly charged with responsibility therefor, it was not prejudicial error to refuse to allow the defendant master to specifically deny certain statement of other witnesses touching that issue, or to explain certain statements credited to him by such witnesses.

20. MASTER AND SERVANT—*sufficiency of instruction to indicate necessity of finding joint negligence of defendants.* Instructions, in an action for wrongful death charged to the joint negligence of master and servant, held sufficiently to indicate that both defendants were not to be found guilty because the evidence proved the guilt of one.

21. INSTRUCTIONS—*propriety of instruction in language of statute.* In general, an instruction in the language of the statute may be regarded as sufficient.

22. HIGHWAYS—*when instruction in language of Motor Vehicle Act touching speed of automobiles not misleading.* An instruction, in an action for wrongful death alleged to have resulted from negligence in the operation of an automobile, touching the rate of speed of automobiles and couched in the language of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 23, held not open to the objection that it probably misled the jury, especially in view of another instruction on the same subject given at the request of the defendants.

23. DAMAGES—*propriety of reference to ad damnum in instruction.* An instruction is not erroneous because mentioning the amount of damages claimed in the declaration unless there is something in the instruction which tends to give the jury to understand that they should allow the full amount so claimed.

24. DAMAGES—*when reference to ad damnum in instructions not erroneous.* An instruction, in an action for wrongful death, which told the jury that the damages, "if any," could not exceed "the sum of $10,000 claimed in the declaration filed herein," held not erroneous as tending to lead the jury to believe that they should find the full amount of damages claimed in the declaration.

25. DAMAGES—*verdict for $9,360 as excessive in action for wrongful death.* A verdict for $9,360 held not so excessive, in an action for wrongful death alleged due to the negligent operation of an automobile wherein the jury were instructed to award only compensatory damages, as to require reversal on appeal.

McSurely, J., specially concurring.

Appeal by defendants from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1924. Affirmed. Opinion filed March 29, 1926.

PEDEN, KAHN & MURPHY and EDWARD C. HIGGINS, for appellants.

JAMES L. BYNUM, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an action of trespass on the case brought by Gregory T. Van Meter, administrator of the estate of Michael F. O'Rourke, deceased, against Fred C. Gurney and Perry C. DeForrest, to recover damages for

the death of O'Rourke, who was struck and fatally injured by an automobile which the plaintiff alleges was under the control and operation of Gurney and DeForrest.

Gurney and DeForrest each filed the plea of the general issue, and a special plea alleging nonownership and operation of the automobile.

The case was tried before the court and a jury. The jury found the defendants guilty and assessed the plaintiff's damages at $9,360. The court entered judgment on the verdict. From the judgment the defendants have prosecuted this appeal.

The accident occurred at the corner of Seventy-fifth Street and Dorchester Avenue, thoroughfares in the City of Chicago, in the evening between seven and eight o'clock. Seventy-fifth Street runs east and west and Dorchester Avenue runs north and south. At Dorchester Avenue, and for two blocks west of Dorchester Avenue, Seventy-fifth Street is a business street. Seventy-fifth Street is one of the main thoroughfares on what is called the South Side of Chicago. At the part of the street where the accident happened the street is about 66 feet wide from curb to curb. At the time of the accident the automobile was being driven in an easterly direction on Seventy-fifth Street. There was an arc light on the northeast corner and one on the southwest corner of Dorchester Avenue and Seventy-fifth Street, but the street was not well lighted. The lamps on the automobile were lighted. Gurney was a captain in the police department of the city of Chicago. DeForrest was a patrolman in the department and was designated as a chauffeur. He was assigned to drive Gurney's automobile and he was Gurney's regular driver.

On the day of the accident Gurney had used the automobile in attending a funeral, and at the time of the accident he and DeForrest, with two other occupants of the car, were returning from the funeral.

The automobile was not Gurney's but belonged to a man named Richard F. O'Connor, from whom it had been borrowed by DeForrest to take Gurney to the funeral. Gurney's automobile was out of order, and the night before the funeral DeForrest told Gurney that he would get an automobile and call for him the next day. Gurney did not know from whom DeForrest intended to get the automobile. DeForrest made the arrangements with O'Connor for the loan of O'Connor's automobile, and Gurney had nothing to do with the actual arrangements that DeForrest made with O'Connor. The automobile was a Paige five-passenger automobile. At the time of the accident DeForrest was driving and Gurney was sitting on the rear seat. As they approached Dorchester Avenue a boy of 11 years of age, named Stanley Nesbit, started to cross Seventy-fifth Street at a point approximately 50 or 60 feet west of Dorchester Avenue. When he had reached about the middle of Seventy-fifth Street he was directly in front of the approaching automobile and only a few feet from it, and it was evident that if the automobile continued in its course the boy would be struck by the automobile. In this situation DeForrest, the driver of the automobile, applied the brakes, turned the automobile sharply toward the left and avoided hitting the boy directly with the front of the automobile, but hit him glancingly and knocked him down without, however, seriously injuring him. The automobile continued going, ran up on the sidewalk at the northwest corner of Dorchester Avenue and Seventy-fifth Street and struck and fatally injured O'Rourke. The front wheels of the automobile were over the curb of the street. O'Rourke was under the automobile and it was necessary to back the automobile before he could be removed. When the automobile was turned to avoid striking the boy it was going at the rate approximately of 25 to 35 miles an hour. The weather was clear but it had been cold and was turning

warmer, and the street was damp or in a condition sometimes described as "sweating."

Section 22 of the Motor Vehicle Act, chapter 95a, Illinois Statutes [Cahill's St. ch. 95a, ¶ 23], provides as follows:

"If the rate of speed of any motor vehicle or motor bicycle of said first division [vehicles designed for carrying not more than seven persons], operated upon any public highway in this State where the same passes through the closely built-up business portions of any incorporated city, town or village exceeds ten (10) miles an hour, or if the rate of speed of any such motor vehicle or motor bicycle operated on any public highway in this State where the same passes through the residence portions of any incorporated city, town or village exceeds fifteen (15) miles an hour, or if the rate of speed of any such motor vehicle or motor bicycle operated on any public highway in this State outside the closely built-up business portions and residence portions within any incorporated city, town or village exceeds twenty (20) miles an hour  *  *  * such rates of speed shall be *prima facie* evidence that the person operating such motor vehicle or motor bicycle is running at a rate of speed greater than is reasonable and proper, having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person."

The first ground on which the defendants ask for a reversal of the judgment is that the plaintiff has failed to establish the cause of action alleged in the declaration.

Counsel for the defendants argue that the declaration states a cause of action against the defendants as joint tort feasors, and does not state a cause of action on the doctrine of master and servant, and that "the evidence introduced by the plaintiff to establish a liability against both defendants is all to the point that on the occasion in question DeForrest was oper-

ating and driving the automobile as· the servant of Gurney, and the claim is made, under such evidence, that Gurney is liable as master for the acts of DeForrest, on the doctrine of *respondeat superior.*" In other words, the contention of counsel for the defendants on the evidence is that if the defendants are liable at all they are liable on the doctrine of master and servant and not on the ground of joint tort feasorship.

Counsel for the plaintiff contends that the objection of counsel for the defendants involves a question of variance between the proof and the declaration, and that as the variance was not pointed out specifically on the trial, the question of variance was not saved for review.

If the question was one only of variance, the contention of counsel for the plaintiff would be correct. *Linquist v. Hodges,* 248 Ill. 491, 497; *Carney v. Marquette Third Vein Coal Min. Co.,* 260 Ill. 220, 225; *Libby, McNeill & Libby v. Scherman,* 146 Ill. 540, 549; *Harris v. Shebek,* 151 Ill. 287, 292, 293. But although the objection involves the question of variance, it also includes the question whether the cause of action alleged in the declaration is supported by the proof. As the defendants made a motion at the close of the plaintiff's evidence to direct a verdict in favor of the defendants, and renewed the motion at the close of all the evidence, the question whether the proof sustains the cause of action alleged in the declaration was saved for review. *Chicago Union Traction Co. v. Brethauer,* 223 Ill. 521, 525.

In considering the question whether the declaration alleges a cause of action on the doctrine of master and servant, every reasonable presumption and intendment will be indulged in favor of the declaration, as the declaration is not to be tested as if on demurrer, but as if after verdict. *Wagner v. Chicago, R. I. & P.*

*R. Co.,* 277 Ill. 114, 119; *O'Rourke v. Sproul,* 241 Ill. 576, 589, 590.

The general rule in regard to what the declaration should allege in order to show the relationship of master and servant is stated in 39 Corpus Juris, p. 1352, as follows:

"The complainant must allege the existence of the relationship of master and servant, that such relationship existed at the time of the injury, and with respect to the particular transaction from which the tort arose. Nevertheless, a direct averment of these facts is not necessary, but it will be sufficient to allege the facts which establish such relationship."

In the case at bar the declaration does not allege in terms that the relationship of master and servant existed between the defendants. But counsel for the plaintiff maintains that the relationship is sufficiently established by the following averments in the declaration: "The defendants and each of them for themselves and for each other, were the owners of, were in the possession of, were using and operating a certain automobile * *. * over a certain public street, to wit, 75th street"; that "it then and there became and was the duty of the defendants and each of them, for themselves and for each other, to have so controlled, managed and operated the said automobile in such a careful and prudent manner, etc."; yet "the defendants, or either of them, acting for themselves and for each other, did not regard their duty in that behalf, but on the contrary thereof did then and there, for themselves and for each other, carelessly and negligently, etc."; that "the defendants and each of them did then and there violate the said statutes" (Motor Vehicle Act); that "the defendants and each of them did then and there manage, control and operate the said automobile in a wanton, reckless and malicious manner and without any regard for the life of the deceased."

In our opinion these allegations are not sufficient to establish the relationship of master and servant between the defendants, even when all intendments and presumptions are indulged in favor of the allegations. In our view the allegations state a cause of action against the defendants only as joint tort feasors. We do not think, however, that counsel for the defendants are correct in their contention that the proof fails to sustain a cause of action on the theory of joint tort feasors, and that on the evidence the defendants could be held liable only on the doctrine of master and servant. If the right of the plaintiff to recover should be considered from the aspect of the evidence alone, we are of the opinion that the defendants could be held liable jointly both on the theory of tort feasorship, and on the doctrine of master and servant, or the equivalent relationship of principal and agent. But when the declaration, which charges only tort feasorship, is considered in connection with the evidence, the plaintiff's right of recovery must be restricted to tort feasorship.

In the case of *Shaffer v. Union Brick Co.*, 128 Fed. 97, in discussing the question of the joint liability of the master and the servant when both are negligent in fact, the court said (pp. 100, 101):

"The negligent act of the servant complained of may be done in the presence of the master and under his direction, or in the absence of the master, in pursuance of his express direction or command. In such case both servant and master are liable to an injured third party, and both are negligent in fact, and liable because they are negligent. In such case the cause of action against both is for negligence in fact, and such cause of action may be joint or several, at the election of the party injured."

In the case at bar the question whether Gurney was negligent in fact depends largely on the relationship that existed between Gurney and DeForrest. If Gur-

ney were merely an occupant of the automobile as a stranger to DeForrest, the question whether he was negligent in fact would be different from the question whether he was negligent in fact if he was the master or principal of DeForrest.

Counsel for the defendants argue with confidence and earnestness that the evidence does not show that the defendants were joint tort feasors; that according to the evidence the only ground on which the defendants could be held liable, if at all, would be on the doctrine of *respondeat superior,* and that the law is well settled that a joint action against master and servant cannot be maintained where the liability against the master is sought to be imposed "solely under the doctrine of *respondeat superior.*"

We do not think that it is accurate to say that a joint action against the master and the servant cannot be maintained for the servant's negligence, where the liability against the master is sought to be imposed "solely under the doctrine of *respondeat superior.*" Such an interpretation of the doctrine of *respondeat superior* gives the doctrine too restricted a scope.

As defined in Cyclopedia of Law and Procedure, vol. 34, pp. 1673, 1674, the rule of *respondeat superior* is as follows:

"Literally 'Let the principal answer.' A general rule which charges the master with liability for the servant's negligence in the master's business causing injury to third persons; founded on this principle, that he who expects to derive advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it."

In general the principles governing the rights, duties and liabilities growing out of the relations of master and servant, are the same as the law of principal and agent, as the law of principal and agent is an outgrowth and expansion of the law of master and

servant. 31 Cyc. p. 1191. In the case at bar it is immaterial on the facts whether the relationship between Gurney and DeForrest is termed principal and agent or master and servant.

From the above statement of the doctrine of *respondeat superior* it will be observed that the doctrine is broad enough to hold the master liable for every negligent act of his servant, where the act was within the scope of the servant's duties, whether the master is negligent in fact or whether the negligence of the servant is imputed to the master on the ground of public policy. In other words, we do not think that the doctrine of *respondeat superior* is limited or restricted to those cases only where the master was absent when the servant committed the negligent act, or did not participate in the act, or did not direct the servant to commit the act, or did not ratify or adopt the act as his own subsequently. We think the doctrine of *respondeat superior* applies also to cases where the master is negligent in fact. In such cases the master could be held as a joint tort feasor with the servant, and also be held on the doctrine of *respondeat superior*. Or to express our idea in another way, we do not think that the doctrine of *respondeat superior* ceases to apply merely because the doctrine of joint tort feasorship also may be applicable. The relationship of master and servant still exists even though the master and servant may be liable as joint tort feasors. The joint liability does not destroy the relationship of master and servant. The duties and obligations imposed by law on the master are not terminated because he may become a joint tort feasor with his servant. Suppose, for example, that a master was sued for the negligent act of his servant on the theory of *respondeat superior,* and on the trial the evidence established not only the relationship of master and servant, but also showed that the master was a joint tort feasor with his servant, should a motion be

allowed which is made by the defendant at the close of the plaintiff's case to exclude the evidence and direct a verdict in favor of the defendant on the ground that the proof did not sustain the cause of action for the reason that the doctrine of *respondeat superior* is not applicable where the master is a joint tort feasor with the servant? We think not. In our view the master could be held liable on the doctrine of *respondeat superior*, notwithstanding the fact that he was also a joint tort feasor.

The cases in which the master is absent or is not negligent in fact, and is held liable on the ground of public policy, are cases merely typical of the largest class of cases to which the doctrine of *respondeat superior* applies.

It is true that in some of the cases the courts do say that a joint action cannot be maintained against the master and the servant for the servant's negligent act, where the master is held liable "solely on the doctrine of *respondeat superior*." In those cases, however, it will be found that the master was either absent, or not negligent in fact, and was held liable on the ground of public policy, and that probably what the writers of the opinions had in mind and intended to say when they used the term *respondeat superior* was that the master could not be held jointly with the servant where the master was absent, or was not negligent in fact, and was held liable on the ground of public policy, as in such cases the liabilities of the master and the servant would be different, the servant being liable personally for the wrongful act, and the master being liable for imputed negligence on the ground of public policy.

The rule as to when the master and the servant cannot be sued jointly is generally stated in the form in which it appears in the opinion of Mr. Justice Taft in the case of *Warax v. Cincinnati, N. O. & T. P. Ry. Co.*, 72 Fed. 637 (p. 642):

"The master cannot be joined as defendant in the action against his servant for negligence, where the master is not personally concerned in the negligence, either by his presence or express direction."

On this question, however, the decisions are in hopeless conflict and confusion. 18 Ruling Case Law, sec. 241, p. 780; 39 Corpus Juris, p. 1314. There is even a difference of opinion concerning the weight of authority in regard to the question. The Cyclopedia of Law and Procedure, vol. 26, p. 1545, and Ruling Case Law, vol. 18, sec. 241, p. 780, take contrary views on the question of the weight of authority.

In Illinois the precise question has not been decided by the Supreme Court. The question has been before the Appellate Courts of Illinois, but there is a conflict in their decisions.

In the case of *Johnson v. Magnuson,* 68 Ill. App. 448, where the master was absent and the negligence of his servant was imputed to him on the ground of public policy, it was held that a joint action could be brought against the master and the servant. The rule announced in *Johnson v. Magnuson* is the one adopted in the following cases: *Wright v. Compton,* 53 Ind. 337, 339, 340; *Phelps v. Wait,* 30 N. Y. 78, 79; *Schumpert v. Southern R. Co.,* 65 S. C. 332, 336, 339; *Suydam v. Moore,* 8 Barb. (N. Y.) 358, 367, 368; *Greenberg v. Whitcomb Lumber Co.,* 90 Wis. 225, 232.

In the case of *Herman Berghoff Brewing Co. v. Przbylski,* 82 Ill. App. 361, after an extended review of the authorities, the court (Mr. Justice Shepard dissenting) refused to follow the case of *Johnson v. Magnuson, supra,* and held (p. 374) that "a judgment cannot be sustained against the master and servant jointly in a case where the master is liable only upon the doctrine of *respondeat superior.*"

We do not think that the court intended to say that whenever the doctrine of *respondeat superior* is applicable there cannot be a joint action against the mas-

ter and the servant. The defendants in the case were master and servant, and the negligent act of the servant was committed in the absence of the master and without his express direction or ratification. The master could have been held liable only on the ground of public policy. When the court said that "a judgment cannot be sustained against the master and servant jointly in a case where the master is liable only upon the doctrine of *respondeat superior*," the court probably meant that in that particular class of cases in which the master is held liable under the doctrine of *respondeat superior* on the ground of public policy only and is not negligent in fact, the master and servant cannot be joined.

The case of *Herman Berghoff Brewing Co. v. Przbylski, supra,* has been cited with approval by Illinois Appellate Courts in the following cases: *Schmidt v. Balling,* 91 Ill. App. 388, 390; *McNemar v. Cohn,* 115 Ill. App. 31, 36.

The grounds on which the court based its decision in the case of *Herman Berghoff Brewing Co. v. Przbylski, supra,* were (p. 374) that the master is held liable by virtue of public policy and not on the theory that the act of the servant is the act of the master; that the servant's liability on the other hand arises because of his personal act in committing the wrong, and that liabilities created on two such different grounds should not be joined.

In the case of *Parsons v. Winchell,* 5 Cush. (Mass.) 592, the court said (p. 594) that if a joint judgment should be obtained against the master and the servant where the master was not negligent in fact, but was held liable only on the ground of public policy, the judgment and execution would be against the master and servant jointly, as joint wrongdoers, and if the master alone should satisfy the execution he could not call on the servant for reimbursement, nor even for contribution. The reasons for the rule given in

the cases of *Herman Berghoff Brewing Co., supra,* and *Parsons v. Winchell, supra,* are the reasons generally assigned by the courts which hold that master and servant cannot be joined in one action where the master is not negligent in fact, and is held liable only on the ground of public policy. *Parsons v. Winchell, supra; Mulchey v. Methodist Religious Society,* 125 Mass. 487, 489, 490; *Warax v. Cincinnati, N. O. & T. P. Ry. Co., supra; Hukill v. Maysville & B. S. R. Co.,* 72 Fed. 745, 754, 755; *Helms v. Northern Pac. Ry. Co.,* 120 Fed. 389, 395, 397; *McIntyre v. Southern Ry. Co.,* 131 Fed. 985, 987; *Shaffer v. Union Brick Co.,* 128 Fed. 97, 100.

In the recent case of *McHale v. McQuigg,* 236 Ill. App. 295, we held that the two codefendants, Mrs. Frederick McQuigg and Mr. Frederick McQuigg, could not be sued jointly on the doctrine of *respondeat superior,* as the evidence showed that Mr. McQuigg was absent at the time of the accident and the evidence did not show that Mrs. McQuigg was acting as the agent of Mr. McQuigg when the accident occurred, and further we held that the two codefendants could not be held jointly on the ground that they were guilty of joint negligence, as the evidence showed that Mr. McQuigg was not a joint tort feasor with Mrs. McQuigg. In the opinion of the court, which was written by Mr. Justice McSurely, it is stated:

"It is not controverted that when the automobile struck plaintiff it was operated solely by Mrs. McQuigg, and that her husband, Mr. McQuigg, was not present. * * * There is a total lack of evidence as to any concert of action or common intent of defendants with reference to the operation of the automobile at the time of this accident. So far as the record shows, the defendant, Mr. McQuigg, neither owned the car nor operated it at any time and was entirely unaware of and unconnected with this particular trip. The only relation he is shown to have had with the

occurrence is his appearance on the scene after the accident.''

In all of the cases we have examined that hold that the master and the servant cannot be sued jointly, the master was absent when the negligence was committed. The implication from those cases is that if the master were present at the time of the servant's negligent act, a materially different question might arise in respect of the joint liability of master and servant. This is obviously so, as the facts and circumstances connected with the negligent act of the servant might be such when the master was present as to render the master a joint tort feasor with his servant.

There are cases that imply that the mere presence of the master when the servant commits the negligent act may be sufficient to render the master liable as a joint tort feasor.

In the case of *Warax v. Cincinnati, N. O. & T. P. Ry. Co., supra,* the court said (p. 642): ''The cases which support the view that the master cannot be joined as defendant in the action against his servant for negligence, where the master is not personally concerned in the negligence, either by his presence or express direction, are as follows.'' Citing cases. It will be noted that the statement ''either by his presence *or* express direction'' is in the alternative.

The same language, namely, ''by his presence *or* direction,'' is used in the Cyclopedia of Law and Procedure, vol. 26, p. 1545, and in L. R. A. (N. S.) vol. 12, p. 670.

In the case of *French v. Central Const. Co.,* 76 Ohio St. 509, the court uses substantially the same language, as follows (p. 517): ''Neither committed in the presence of the master *nor* by his express direction.'' Citing cases.

In the case at bar we do not hold, as a matter of law, that the mere presence of the defendant, Gurney,

at the time the accident occurred, renders Gurney jointly liable with DeForrest. We are of the opinion that the question whether Gurney was jointly negligent with DeForrest was a question of fact for the jury to decide, and that in determining that question the presence of Gurney could be considered in connection with all of the other facts in the case. The question for the jury was whether Gurney, as DeForrest's principal or master, failed to exercise the supervision and control over DeForrest that ordinary prudence required in the circumstances.

We are of the opinion that the evidence is sufficient to support a finding of the jury that Gurney and DeForrest were joint tort feasors, and further that the evidence is sufficient to hold Gurney liable on the doctrine of *respondeat superior.* However, as the declaration states a cause of action on the theory of joint tort feasorship only, and not a cause of action on the doctrine of master and servant, or in other words, *respondeat superior,* Gurney can be held liable only on the ground of tort feasorship.

The jury were instructed on the theory of principal and agent and master and servant at the request of the defendants as follows:

"The court instructs the jury that if they find from the evidence that the defendant, Perry C. DeForrest, at the time and place of the happening of the accident in question was not acting as the agent or servant of the defendant, Fred C. Gurney, and that the defendant, Fred C. Gurney, was not driving or operating or controlling the automobile in question, then they should find the defendant, Fred C. Gurney, not guilty."

It will be observed that the instruction, which is a peremptory one, states the law more favorably for the defendants than they were entitled to have it stated, in that it ignores the question whether Gurney

was a tort feasor, and permits him to be found not guilty even though he may have been a tort feasor.

There are adjudicated cases which tend to support our conclusion that there is sufficient evidence to justify a finding of the jury that Gurney was negligent in fact as a tort feasor.

In the case of *Bell v. Jacobs,* 261 Pa. 205, which was an action for injuries caused by an automobile in which the defendant was riding, and which was being driven for the defendant by a party named Fink, who was acting temporarily as the defendant's chauffeur, the court said (pp. 207, 208):

"Defendant had secured Mr. Fink, an expert workman, to make some repairs to the automobile, and, before leaving it at the repair shop, they were taking it for a drive to see what was needed. Fink was acting as chauffeur, and defendant sat beside him, but made no request or suggestion as to the driving of the car. It was defendant's car, and he acquiesced in what Fink, who was acting for him, did, and cannot be excused because he was not personally at the wheel. A man out riding in his car is not relieved from responsibility for its management because, with his permission, another is acting as driver; and this is especially so where the owner tacitly assents to the manner in which the car is driven. There is a presumption, not here rebutted, that an owner present in his car has power to control it."

In the case of *Byram v. McGuire,* 40 Tenn. 529, 533, 534, it was held that a master was liable for the act of his servants although not committed in the actual presence of the master, but committed while the master was so near at hand that he must have known that the act was being done, and that he should have controlled the servants.

On the general proposition whether in the case at bar the automobile was being operated negligently,

expressions of the court in the following cases are pertinent: *Morrison v. Flowers,* 308 Ill. 189, 196, 197; *People v. Camberis,* 297 Ill. 455, 460, 461.

In the case of *Morrison v. Flowers, supra,* the court said (p. 197):

"When a motor vehicle is proceeding along at a lawful speed and is obeying all the requirements of the law of the road and all the regulations for operation of such machine, the driver is not, as a general proposition, liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid the injury; but if one is running his automobile at a speed in excess of the statutory limit or at an unreasonable or dangerous speed, he cannot escape liability because the child who is injured ran in front of the automobile so suddenly that the accident was then unavoidable."

In the case of *People v. Camberis, supra,* the court quoted the following language with approval (p. 461):

"One who wilfully or negligently drives an automobile on a public street at a prohibited rate of speed or in a manner expressly forbidden by statute, and thereby causes the death of another, may be guilty of homicide; and this is true although the person who is recklessly driving the machine uses, as soon as he sees a pedestrian in danger, every effort to avoid injuring him, provided that the operator's prior recklessness was responsible for his inability to control the car and prevent the accident which resulted in the death of the pedestrian."

Drivers of automobiles are presumed to know the provisions of the Motor Vehicle Act [Cahill's St. ch. 95a] in regard to the rates of speed of automobiles. *People v. Camberis, supra; People v. Falkovitch,* 280 Ill. 321, 325.

Counsel for the defendants contend that the judgment should be reversed for the reason that, in answer to special interrogatories, the jury found that

both defendants were guilty of wanton and wilful negligence, although the declaration does not allege properly wilful and wanton negligence, and the evidence does not show wilful and wanton negligence.

Counsel for the plaintiff maintain that the defendants are conclusively bound by the special findings of the jury for the reason that the special findings were not specifically objected to by the defendant on the motion for a new trial. Without deciding the question whether the objections of counsel for the defendants to the special findings have been saved for review, we have examined the objections and we are of the opinion that they are without merit.

The implication of the contention of counsel for the defendants in respect of the special findings is that the special findings indicate that the general verdict of the jury was based on the belief that the defendants were guilty of wanton and wilful negligence and that the jury awarded damages on that basis. We can not presume legitimately that the general verdict is based on wanton and wilful negligence merely because in answer to the special interrogatories the jury found that the defendants were guilty of wanton and wilful negligence. The rule is that where the declaration charges both wilful and ordinary negligence, even though the proof shows ordinary negligence and not wilful negligence, a recovery may be had on ordinary negligence. *Guianios v. De Camp Coal Min. Co.*, 242 Ill. 278, 281.

It is also the rule that all reasonable presumptions will be indulged in favor of a general verdict while nothing will be presumed in aid of a special finding. *Devine v. Federal Life Ins. Co.*, 250 Ill. 203, 206; *Wicks v. Cuneo-Henneberry Co.*, 319 Ill. 344, 350.

In the case of *Chicago City R. Co. v. Jordan*, 215 Ill. 390, cited by counsel for the defendants in support of their contentions in respect of the special findings, the court did not hold that the special findings of wanton

and wilful negligence alone justified the inference that the general verdict was based on wanton and wilful negligence. The court said (pp. 397, 398) that the jury were not instructed fairly on the question of wanton and wilful negligence, and that "taking the instructions and the special interrogatories together, and the answer of the jury to the interrogatory, which was based upon no evidence, it seems clear they regarded great negligence as wilful or wanton."

In the case at bar the jury were fairly instructed on the question of wanton and wilful negligence. Furthermore, no instructions were given on the theory of exemplary or vindictive damages. The only instruction on the question of damages related to compensatory damages. Therefore, even if we should indulge the presumption that the general verdict is based on wanton and wilful negligence, we cannot further presume that as part of the damages awarded the jury included exemplary or vindictive damages contrary to an instruction which told the jury that if they should find the defendants guilty of negligence they should assess the damages "at such sum as they shall believe, from the evidence, fair and just compensation, based upon the pecuniary loss, if any, resulting from the death of the said Michael O'Rourke."

We further are of the opinion, as an independent ground of our decision, that the allegations in the declaration are sufficient to support the special findings of wanton and wilful negligence, and that the findings are not manifestly against the weight of the evidence. *Walldren Express & Van Company v. Krug,* 291 Ill. 472, 477.

The case of *Harris v. Piggly Wiggly Stores, Inc.,* 236 Ill. App. 392, recently decided by this division of the Appellate Court, is cited by counsel for the defendants as authority that the allegations in the case at bar do not allege properly wanton and wilful negligence. We think that the allegations in the two cases

are materially different. In the case of *Harris v. Piggly Wiggly Stores, Inc., supra,* the allegations charged in substance merely that a motor truck was wantonly and wilfully operated at a high, reckless and dangerous rate of speed. The court said these allegations were not sufficient; that there should have been other allegations charging that the defendant injured the plaintiff "through volition with knowledge actual or implied." In the case at bar the allegations not only charge that the automobile was operated in a wanton, reckless and malicious manner, but that the automobile was so operated "without any regard for the life of the deceased."

Counsel for the defendants contend that the relationship of master and servant has not been shown to exist between Gurney and DeForrest by competent evidence. The relationship was established by witnesses who testified to statements made by Gurney after the accident. Counsel for the defendants maintain that the statements which the witnesses testified Gurney made were not substantive evidence. We do not agree with the contention of counsel for the defendants. The rule is well settled that admissions of a party to a suit are always competent and admissible as substantive evidence when offered by the opposite party, and that evidence of such admissions is not subject to the objection that the evidence is hearsay. *Stump v. Dudley,* 285 Ill. 46, 47; *Johnson v. Peterson,* 166 Ill. App. 404, 405. Furthermore, the relationship of master and servant between Gurney and DeForrest is established clearly by Gurney's own testimony.

Counsel for the defendants contend that the trial court committed reversible error in not allowing Gurney to deny specifically certain parts of the testimony of the witnesses who testified to the statements of Gurney in regard to the relationship of master and servant between Gurney and DeForrest, and also in not permitting Gurney to testify as to whether there

was a customary meaning in the police department in regard to the expression "my man," which the witnesses testified Gurney used in reference to DeForrest.

We do not think that Gurney was prejudiced by the rulings of the trial court in the respects complained of. Gurney was allowed to testify fully as to his version of the statements attributed to him by the witnesses. The term "my man" was not of controlling importance. It was only cumulative evidence on the question of the relationship of master and servant between Gurney and DeForrest. There was other testimony which plainly showed the relationship.

Counsel for the defendants further contend that seven of the instructions given on behalf of the plaintiff were erroneous. The objection to the first instruction complained of is that "under this instruction the jury might find that the plaintiff had proved his case against DeForrest by a preponderance of the evidence, but nevertheless was required by the instruction to find a verdict against *both* defendants."

When the instruction in question is considered with the other instructions in the case we do not think that reasonably construed it would be susceptible of the interpretation contended for by counsel for the defendants.

Furthermore, an instruction which we have set out above and which was given by the court at the request of the defendants expressly told the jury that if they believed that DeForrest was not acting as the agent or servant of Gurney, and that Gurney was not operating the automobile, the jury should find Gurney not guilty. This instruction, which was a more favorable statement of the law than Gurney was entitled to, indicated to the jury that both defendants were not to be found guilty merely because the evidence showed one guilty.

The second instruction objected to by counsel for the defendants is an instruction in the language of

section 22 of the Motor Vehicle Act [Cahill's St. ch. 95a, ¶ 23] in relation to the rate of speed of automobiles. Counsel for the defendants contend that the jury "were left to their own interpretation of the statute, and nobody knows how they interpreted it or applied it to the evidence."

The general rule is that ordinarily an instruction in the language of the statute may be regarded as sufficient. *Mertens v. Southern Coal & Mining Co.*, 235 Ill. 540, 551; *Kellyville Coal Co. v. Strine*, 217 Ill. 516, 536; *Donk Bros. Coal & Coke Co. v. Peton*, 192 Ill. 41, 43, 44; *Mt. Olive & S. Coal Co. v. Rademacher*, 190 Ill. 538, 543; *Ward v. Meredith*, 220 Ill. 66, 68; *People v. McIntosh*, 242 Ill. 602, 606. In approving an instruction in the language of the Motor Vehicle Act in the case of *Geschwinder v. Comer*, 222 Ill. App. 417, the court said (p. 421):

"In cases where the Motor Vehicle Act was under consideration, it has been held that an instruction which lays down a rule of law in the words of the law itself is good."

In the case of *Harris v. Piggly Wiggly Stores, Inc.*, *supra*, cited by counsel for the defendants in support of their contention, the court recognized the general rule, but held that in the particular case the jury were probably misled by the instruction and that the giving of the instruction was reversible error.

In the case at bar we do not think that reasonably it can be said that the jury were misled by the instruction in question, when the instruction is read in connection with the following instruction given at the request of the defendants:

"The court instructs the jury that the law in this state does not regulate a precise speed in miles per hour at which a motor vehicle must at any given time or place be run, but the law only states that such rate of speed must be no greater than is reasonable and proper, having regard to the traffic and the use made

Van Meter v. Gurney, 240 Ill. App. 165.

of the way, or so as to endanger the life or limb or property of any person, and leaves it to the jury to say under all the circumstances surrounding any given case whether or not the automobile in question was being propelled at a speed that is reasonable and proper, having regard to the traffic and the use made of the way, or so as to endanger the life or limb or property of any person.''

The third instruction complained of by counsel for the defendants defines ordinary care. We think that the instruction is substantially correct.

The fourth instruction which counsel for the defendants objects to defines negligence. The definition of negligence given in the instruction is substantially the same as the definition of negligence given in Bouvier's Law Dictionary. We do not think the criticisms of the instruction made by counsel for the defendants are sound.

The objection to the fifth instruction complained of by counsel for the defendants is similar to the objection urged against the first instruction complained of, namely, that ''under the instruction if the jury believed that DeForrest was guilty of negligence, then the jury's verdict should be against both defendants.'' When this instruction is read with the other instruction we do not think that reasonably it could be construed as contended for by counsel for the defendants.

The sixth instruction objected to by counsel for the defendants relates to wanton and wilful negligence. We think that the instruction is substantially correct.

The seventh instruction objected to by counsel for the defendants relates to the question of damages. Counsel for the defendants contend that the instruction ''does not say to whom such sum awarded by the jury shall be a fair and just compensation, nor does the instruction tell the jury by whom the 'pecuniary loss' must be sustained.'' We do not think that the objection of counsel for the defendants is well taken.

The instruction is further objected to by counsel for the defendants for the reason that the instruction told the jury that the damages, "if any," could not exceed "the sum of $10,000 claimed in the declaration filed herein." The rule is that an instruction is not erroneous which mentions the amount of the damages claimed in the declaration, unless there is something in the instruction which tends to lead the jury to understand that they should allow the full amount so claimed. *Central Ry. Co. v. Bannister,* 195 Ill. 48, 51, 53; *Kellyville Coal Co. v. Strine, supra.* We do not think that there is anything in the instruction in the case at bar that would lead the jury to believe that they should find the full amount of damages claimed in the declaration.

In considering the objections of counsel for the defendants to the instructions, it may be stated that 18 instructions were given on behalf of the defendants, and that these instructions fully presented the defendants' theory of the case to the jury.

The final contention of counsel for the defendants is that the judgment should be reversed on the ground that the damages awarded by the jury are excessive. We do not think that we would be justified in reversing the judgment on that ground.

For the reasons stated the judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., concurs.

MR. JUSTICE McSURELY, specially concurring: I concur in the conclusion but not in all that is said in the opinion.